UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISSA ISEIEV,<br><br>              Petitioner,<br><br>   v.<br><br>ERNESTO SANTACRUZ, *et al.*,<br><br>              Respondents. | Case No. 5:26-cv-1033-CV (DFM)<br><br>**ORDER GRANTING PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[DOC. # 3]** |

1

On March 4, 2026, Petitioner Isssa Isiev filed an Ex Parte Motion for Temporary Restraining Order ("Motion"). Doc. # 3 ("Mot./App."). On March 9, 2026, Respondents[1] filed a Opposition, and on March 10, 2026, Petitioner filed a Reply. Doc. # 8 ("Opp."); Doc. # 9 ("Reply"). Having reviewed and considered all the briefing filed with respect to the Motion, the Court finds that oral argument is not necessary to resolve the Motion, *see* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001), and concludes as follows.

I. **INTRODUCTION**

On March 4, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2241 against Respondents. Doc. # 1 ("Pet.").

The same day, Petitioner filed the Motion for Temporary Restraining Order ("TRO") that would require Petitioner's immediate release from Respondent's custody and would enjoin Respondents from re-detaining Petitioner unless there is (1) a further order from this Court or (2) if Respondents provide a prompt hearing before a neutral decisionmaker at which they bear the burden of demonstrating, by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that continued detention is necessary. Mot. at 18. Petitioner also asks that Respondents be prohibited from transferring Petitioner outside of this District or removing him from the United States during the pendency of these habeas proceedings. *Id.*

//
//
//
//

---

[1] Respondents are Ernesto Santacruz, Jr., in his official capacity as Field Office Director of the Los Angeles Immigration and Customs Enforcement ("ICE") Office; Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as the Secretary of the Department of Homeland Security; and Pamela Bondi, in her official capacity as Attorney General of the United States of America (collectively, "Respondents").

## II. FACTUAL BACKGROUND

Petitioner is a citizen and national of Russia who entered the United States at the San Ysidro port of entry on or around May 12, 2023 and was subsequently released on parole. Doc. # 1-1 (Declaration of Petitioner's counsel Magomed Esendirov) at 7, 23.[2]

On June 5, 2025, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, which remains pending before the Executive Office for Immigration Review ("EOIR"). *Id*. at 3, ¶ 4.

On February 27, 2026, Petitioner was detained by ICE. *Id*. 3–4, ¶¶ 7, 8. He was not provided with prior notice informing him that his parole had been revoked, nor was he provided with a bond hearing or individualized determination that his continued detention was necessary. *Id*.[3]

## III. LEGAL STANDARD

The standard for issuing a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a temporary restraining order and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

---

[2] Petitioner's I-589 form, submitted under penalty of perjury in support of his application for asylum, identifies his current status as "DT." Doc. # 1-1 at 7. The code "DT" designates a class of admission for individuals granted parole by U.S. Customs and Border Protection at a district office or port of entry. *See* U.S. Dep't of Educ., *U.S. Citizenship & Eligible Noncitizens*, Federal Student Aid Handbook (2024–2025), Vol. 1, Ch. 2 (available at https://fsapartners.ed.gov/knowledge-center/fsa-handbook/2024-2025/vol1/ch2-us-citizenship-eligible-noncitizens?) ("The 'DT' COA indicates parole authorized by U.S. Customs and Border Protection District Office or Port of Entry.")

[3] Respondents do not contest that Petitioner was detained without prior notice or an opportunity to be heard. *See generally* Opp.

Under *Winter*, a plaintiff seeking a temporary restraining order must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other *Winter* factors are also met. *Id.* at 1132.

## IV.   DISCUSSION

### A.   Likelihood of Success on the Merits

In the Motion, Petitioner argues that (1) his substantive due process rights were violated by the arbitrary re-detention and (2) his procedural due process rights were violated when Respondents took him into custody without notice and without a pre-deprivation hearing. Doc. # 3-1 at 9–16.

In opposition, Respondents contend (without evidentiary support) that Petitioner has no lawful status in the United States, and that he is an "arriving alien" under 8 C.F.R. § 1001.1, and thus not entitled to a bond hearing. Opp. at 3. Respondents also assert that the Court lacks jurisdiction to order Petitioner's release. *Id*.

This Court has jurisdiction to review the lawfulness of Petitioner's detention. 28 U.S.C. § 2241(c)(3). While DHS authority to revoke Petitioner's parole is discretionary, (see *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010)), Respondents' decision to re-detain Petitioner without providing notice or a hearing is nonetheless reviewable by this Court given Petitioner's constitutional claims. *Id.* ("We retain jurisdiction to review

1  constitutional claims, even when those claims address a discretionary decision.")
2  (alterations removed); *see also*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th
3  Cir.2004) ("[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims
4  of constitutional violations are not barred.").

5　　　　Under the Due Process Clause of the Fifth Amendment to the United States
6  Constitution, no person shall be "deprived of life, liberty, or property, without due process
7  of law." U.S. CONST. amend. V. That interest is particularly weighty when government
8  detention is at issue. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from
9  imprisonment—from government custody, detention, or other forms of physical restraint—
10  lies at the heart of the liberty the [Due Process] Clause protects.").

11　　　　These due process rights apply to noncitizens residing in the United States,
12  regardless of their immigration status. *Zadvydas*, 533 U.S. at 693; *see also Trump v. J.G.G.*,
13  604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens
14  to due process of law in the context of removal proceedings." (citation omitted)). This
15  includes noncitizens who have been released on discretionary parole. *Mata Velasquez v.*
16  *Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *16 (W.D.N.Y. July 16, 2025)
17  (holding that some constitutional due process is required before discretionary parole can
18  be revoked); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (finding
19  that petitioner had a liberty interest in remaining out of custody on bond).

20　　　　Having established a protectable liberty interest, the remaining question is what
21  process is required before Respondents can re-detain Petitioner. *Morrissey v. Brewer*, 408
22  U.S. 471, 481 (1972). "The constitution typically 'requires some kind of a hearing before
23  the State deprives a person of liberty or property,'" particularly because the loss of liberty
24  "cannot be fully compensated after the fact." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-
25  EMC (EMC), 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zinermon v.*
26  *Burch*, 494 U.S. 113, 127 (1990)).

27　　　　When determining what procedures are required by due process, courts apply the
28  three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts must

consider three factors: (1) "the private interest" at stake; (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

### a. Private Interest at Stake

First, Petitioner gained a liberty interest in his continued freedom when he was initially released on parole. *Calderon v. Kaiser*, 25-cv-06695-AMO, 2025 WL 2430609, at *3 (N.D. Cal. Aug. 22, 2025); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025). For example, in *Calderon v. Kaiser*, the petitioner challenged her detention after she had been previously released into the United States on her own recognizance. 2025 WL 2430609, at *1. The district court found that the petitioner had a significant private interest in remaining out of custody because she had an interest in remaining in her home, continuing her employment, and obtaining necessary medical care. *Id.* at 3.

As in *Calderon*, Petitioner acquired a liberty interest when he was first released from custody by DHS, and he has a private interest in maintaining his liberty. Moreover, there is no dispute that Petitioner has maintained that liberty interest because Respondents offer no evidence that he violated any conditions of his release or committed any crimes. *See Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025). Respondents "cannot now about-face and extinguish these liberty interests by pursuing mandatory detention against Petitioners." *Id.* at *9.

Accordingly, the Court finds that Petitioner has a significant private interest in his continued liberty, and thus the first *Mathews* factor favors Petitioner.

### b. Risk of Erroneous Deprivation

The second *Mathews* factor also favors Petitioner because the risk of erroneous deprivation is high absent a pre-deprivation hearing. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory

purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690 (citation omitted). Accordingly, by releasing him in 2023, immigration officers necessarily determined that Petitioner was neither a flight risk nor a danger to the community. Courts have consistently recognized that, in similar circumstances, the risk of erroneous deprivation is substantial when the government provides no new evidence that a petitioner has become a flight risk, a danger to the community, or otherwise violated the conditions of release. *See*, *e.g.*, *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (finding that a pre-detention hearing was necessary to reduce the risk of erroneous deprivation where petitioner was previously paroled, and nothing in the record suggested he had become a security or flight risk); *Calderon*, 2025 WL 2430609, at *3 (finding that a pre-detention hearing was necessary where petitioner had attended all immigration proceedings and had no criminal history).

Here, Respondents have presented no evidence that Petitioner became a flight risk or posed a danger to the community before he was arrested and detained. Given that Respondents have presented no concrete reason for Petitioner's arrest and detention pursuant to a valid state interest, the Court finds that the risk of erroneous deprivation is high absent a pre-deprivation hearing.

### c. Respondents' Interest

Third and finally, this Court joins other recent district court decisions in concluding that Respondents' interest in re-detaining Petitioner without a pre-deprivation hearing is low "because ICE previously made the determination to release [Petitioner], and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its parole determination." *Aviles-Mena*, 2025 WL 2578215, at *6; *Valencia Zapata*, 2025 WL 2741654, at *11. Furthermore, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Becerra*, 2025 WL 691664, at *6). Accordingly, Respondents' interest in keeping Petitioner detained is outweighed by Petitioner's liberty interest in his continued freedom.

Because all three *Mathews* factors favor Petitioner, the Court concludes that Petitioner has demonstrated, at the very least, a serious question going to the merits of his procedural due process claim.[4]

### B. Irreparable Harm

Petitioner is likely to suffer irreparable harm in the absence of a TRO because he is being detained, which constitutes a loss of liberty that is irreparable. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

### C. Balance of the Equities and Public Interest

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, given the Court's determination that Petitioner is likely to succeed on the merits of his claim regarding his detention violating INA regulations (not providing him an informal interview), and in light of the irreparable harms inherent in the deprivation

---

[4] Because the serious questions prong is satisfied as to Petitioner's procedural due process claim, the Court does not reach the likelihood of success as to Petitioner's remaining substantive due process claim. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1139 (9th Cir. 2011); *see also Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630, at *5 n.1 (N.D. Cal. Oct. 15, 2025) (declining to address substantive due process claim after determining that a procedural due process claim was likely to succeed on the merits).

of constitutional rights and in ICE detention, this factor weighs in favor of Petitioner. Further, Respondents cannot claim any harm in following their own regulations.

### D. Appropriate Remedy

Having found that Petitioner has made the requisite showing for the Court to grant a TRO, the Court next considers what relief is warranted.

Respondents argues that Petitioner's immediate release is not warranted, and that the Court should instead "remedy the specific deficiency" with Petitioner's February 27, 2026 detention, such as providing Petitioner with an opportunity to be heard. *See* Opp at 3-4. The Court is not persuaded by this argument. Courts, including this Court, have ordered that a post-deprivation hearing within seven days is the proper remedy where an individual was arrested after arriving in the United States without inspection and without being apprehended. That is a different circumstance than the present case, where Petitioner was inspected at the border and released on parole. For the reasons described above, the Court finds that Petitioner was entitled to a pre-deprivation hearing and is therefore entitled to immediate release.

Because the Court aims to do no more than ensure that Petitioner receives the process he is due, to the extent Petitioner seeks an order requiring Respondents to re-detain him only with this Court's authorization, that request is denied. "Courts should act cautiously when reviewing matters entrusted to the Executive Branch, especially those involving immigration, lest it alter the balance between co-equal branches of government." *Jazi v. Rubio*, No. 25-cv-27 BEN, 2025 WL 2420690, at *2 (S.D. Cal. Aug. 20, 2025); *see also Noem v. Vasquez Perdomo*, 606 U.S. ___, 2025 WL 2585637, at *5 (2025) (Kavanaugh, J., concurring) ("Especially in an immigration case like this one, it is also important to stress the proper role of the Judiciary . . . . [W]e . . . must decline to step outside our constitutionally assigned role to improperly *restrict* reasonable Executive branch enforcement of the immigration laws." (emphasis in original)). Moreover, because the Immigration Courts serve as the apparatus to adjudicate most day-to-day immigration

matters—including by providing pre-deprivation hearings—this Court is not the appropriate forum for such a hearing.

The Court will instead order Petitioner to be immediately released, and will enjoin Respondents from re-detaining him unless Respondent demonstrates at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community, such that his physical custody is required. *See Pinchi v. Noem*, 792 F.Supp.3d 1025 (N.D. Cal. 2025); *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *17–18 (E.D. Cal. Oct. 16, 2025).

### E. Bond

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

### V. CONCLUSION

For the foregoing reasons, the court GRANTS Petitioner's Motion and ORDERS as follows:

1. Respondents are ordered to immediately release Petitioner from custody subject to the conditions of his prior parole.

2. Respondents must file with the Court a Notice of Compliance within twenty-four (24) hours of releasing Petitioner.

3. Respondents may not re-detain Petitioner without providing him with, at minimum, individualized notice describing the change in circumstances necessitating his arrest and detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner may not be detained unless Respondent demonstrates at such a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community, and that there are no conditions that will reasonably assure Petitioner's appearance and the safety of any other person in the community.

4. To preserve the Court's jurisdiction, respondents are enjoined from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court, unless executing a final order of removal issued against Petitioner.

5. This temporary restraining order shall take immediate effect and expires at **5:00 p.m. PT on March 26, 2026**. The temporary restraining order may be extended for good cause or upon Respondents' consent.

6. Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents must file any written response to the Order to Show Cause no later than **March 20, 2026**. Failure to file a response by this deadline shall be deemed as consent to the granting of a Preliminary Injunction. Petitioner shall file a reply no later than **March 24, 2026**

7. The Court shall decide, after reviewing the parties' papers, whether to hold a hearing on the Order to Show Cause or to take the Order to Show Cause under submission.

**IT IS SO ORDERED**.

Dated: 3/12/26

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE